UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| META PLATFORMS, INC., <br> Plaintiff, <br> v. <br> SOCIAL DATA TRADING LTD., <br> Defendant. | Case No. 21-cv-09807-AGT <br><br> **REPORT AND RECOMMENDATION** <br> Re: Dkt. No. 23 |

Meta Platforms, Inc., has moved for default judgment. The undersigned issues this report, recommending that a district judge grant the motion.[1]

## I.   BACKGROUND

### A.   Factual Background

Meta alleges that Social Data Trading Ltd. (SDTL) unlawfully "scraped" information from Meta's Instagram app. *See* Compl. ¶¶ 24–31. SDTL did so by using "automated Instagram accounts and a network of computers or 'bots'" to collect "publicly viewable profiles of Instagram users." *Id.* ¶ 1. The collected data included usernames, profile pictures, posts, likes, followers, and information about followers. *See id.* SDTL sold this data online, marketing it as "demographics and insights about influencers and their audiences." *Id.* (simplified); *see also id.* ¶¶ 30–31.

On or around May 20, 2021, Meta disabled SDTL's Instagram accounts and revoked SDTL's Instagram access. SDTL then "began using a new business name to access and scrape profiles of Instagram users." *Id.* ¶ 2; *see also id.* ¶¶ 32–35 (detailing other efforts Meta took to try to stop SDTL from scraping Instagram profiles). SDTL's principals reside in Russia and were previously associated with other companies that scraped Instagram profiles. *See id.* ¶¶ 5–8.

---

[1] The undersigned cannot "order the entry of judgment" because the defendant hasn't appeared and consented to magistrate jurisdiction. 28 U.S.C. § 636(c)(1).

**B.     Procedural Background**

Meta filed its complaint against SDTL on December 20, 2021. The complaint includes three claims: a breach of contract claim, an unjust-enrichment claim, and a claim for violation of California's Computer Data Access and Fraud Act (CDAFA), Cal. Penal Code § 502.

SDTL is a limited liability company registered in Hong Kong. *See* Compl. ¶ 4. Meta initiated service under the Hague Convention. *See* Dkt. 17.[2] After SDTL didn't timely respond to the complaint, the Clerk entered default and Meta moved for default judgment. *See* Dkts. 19, 23.

## II.  LEGAL STANDARD

Before entering default judgment, the district court must confirm that it has personal and subject-matter jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If jurisdiction is present, the *Eitel* factors are considered to determine if default judgment is warranted.

The *Eitel* factors are (1) the possibility of prejudice to the plaintiff if judgment isn't entered, (2) the merits of the plaintiff's claims, (3) the sufficiency of the complaint, (4) the sum of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether the defendant's default was due to excusable neglect, and (7) the strong policy in favor of obtaining a decision on the merits. *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (citing *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986)).

If the *Eitel* factors support default judgment, judgment may be entered in an amount that is supported by the evidence and that doesn't "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

In considering the motion, the Court accepts the plaintiff's factual allegations as true. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

## III. DISCUSSION

Meta has satisfied all requirements for default judgment.

---

[2] *See* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

### A.   Subject-Matter Jurisdiction

Meta's allegations support diversity jurisdiction. The amount in controversy exceeds $75,000 and the case is between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). *See* Compl. ¶¶ 3–5, 9, 37.

### B.   Personal Jurisdiction

Meta has made out "a prima facie case" of personal jurisdiction. *Brand v. Menlove Dodge*, 796 F.2d 1070, 1072 (9th Cir. 1986). Meta served SDTL with process—a prerequisite for personal jurisdiction, *see Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988)—and put forward allegations supporting that SDTL has sufficient minimum contacts with the forum state. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141–42 (9th Cir. 2017) (reviewing the "minimum contacts" requirement).

#### 1.   Service of Process

Meta served SDTL under Article 5(a) of the Hague Convention. *See* Fed. R. Civ. P. 4(f)(1), (h)(2). *See generally Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 980–81 (N.D. Cal. 2020) (discussing service under the Convention).

Meta provided Hong Kong's central authority with the summons and complaint and asked the central authority to serve SDTL by any method allowed under local law. *See* Dkt. 17 at 5. Hong Kong's central authority directed a bailiff's assistant from the Hong Kong High Court to personally deliver the case documents to SDTL's registered office address. *See id.* at 3. The bailiff's assistant did so on May 17, 2022. *See id.* This method of service complied with Hong Kong law and with Article 5(a). *See* Dkt. 18-2 at 3, Copy of Hong Kong's Central Authority Information Guide (last updated Jan. 19, 2022) (specifying that under Article 5(a) and Hong Kong law, the bailiff will serve court documents "in one of [several] ways," one of which is "[b]y leaving [the documents] at . . . the registered office address if the addressee is a limited company or corporation").

As a backup, Meta also sent the summons and complaint to SDTL by two other means. *See* Dkt. 23 at 18–20. The undersigned won't consider whether those alternative methods of service were lawful because they proved to be unnecessary. If the district judge to whom this case is

reassigned would like to consider them, the undersigned can prepare a supplemental report.

### 2. Minimum Contacts

For claims sounding in tort, like Meta's CDAFA claim, the minimum-contacts test is satisfied when: (i) the defendant "purposefully directs his activities" at the forum state, (ii) the plaintiff's claims "arise[] out of or relate[] to the defendant's forum-related activities," and (iii) the exercise of jurisdiction is not otherwise unreasonable. *Morrill*, 873 F.3d at 1142 (quoting another source). All three requirements are satisfied here.

*First*, SDTL purposefully directed its activities at the forum state. SDTL "scrap[ed] the Instagram accounts of approximately 250,000 California users." Compl. ¶ 11. This was an "intentional act . . . expressly aimed at the forum state . . . [and] causing harm that the defendant kn[ew] [was] likely to be suffered in the forum state." *Morrill*, 873 F.3d at 1142. Among the harm caused, SDTL's scraping "interfere[d] with Meta's products," Compl. ¶ 36, including within California.

*Second*, Meta's claims relate to SDTL's forum-related activities; the claims are based on SDTL's unauthorized scraping of Instagram accounts, including accounts within California.

*Third*, SDTL hasn't demonstrated that the exercise of jurisdiction would be unreasonable. SDTL has the burden of proof on this element. *See Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). And "by failing to participate in this litigation," SDTL has "waived [its] opportunity" to satisfy that burden. *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1094 (N.D. Cal. 2014).

Meta has established a prima facie case of personal jurisdiction for its CDAFA claim. The Court can also exercise personal jurisdiction over Meta's breach of contract and unjust enrichment claims. Those claims and the CDAFA claim "arise[] out of a common nucleus of operative facts." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004).

The undersigned won't consider Meta's alternative theories of personal jurisdiction, *see* Dkt. 23 at 12–14, 16–17, but can address them in a supplemental report if needed.

### C. *Eitel* Factors

Turning to the *Eitel* factors, all seven support default judgment.

First, if default judgment isn't entered, Meta will be prejudiced because it will be left

4

without a judicial remedy.

Second, Meta's claims have merit.

- Breach of Contract Claim: When SDTL created Instagram accounts, it agreed to Instagram's terms of service. *See* Compl. ¶¶ 20–23. Instagram's terms prohibit users from "creating accounts or collecting information in an automated way." *Id.* ¶ 21. SDTL breached this provision. SDTL used "thousands of automated Instagram accounts to scrape data from Meta computers" and from millions of legitimate Instagram accounts. *Id.* ¶¶ 1, 28. Instagram's terms also prohibit users from using Instagram if Meta "previously disabled your account" for violating Instagram's policies. *Id.* ¶ 21. SDTL breached this provision too. "Meta disabled thousands of automated accounts associated with [SDTL]." *Id.* ¶ 28. But SDTL responded by "using a new business name to access and scrape profiles of Instagram users." *Id.* Meta has been damaged by SDTL's breach. Meta has had to spend time and money to investigate and mitigate SDTL's conduct. *See id.* ¶ 37.

- Unjust Enrichment Claim: SDTL profited from its unauthorized scraping by selling the scraped Instagram data online. *See id.* ¶¶ 4, 30–31. If SDTL were allowed to retain its profits, SDTL would be unjustly enriched at Meta's expense. *See Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1132 (2014) ("The elements for a claim of unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another.") (simplified).

- CDAFA Claim: Meta alleges that SDTL violated four subsections of the CDAFA, Cal. Penal Code § 502(c)(1), (2), (3), and (7). Any person who commits the following acts violates these subsections:

    (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to . . . wrongfully control or obtain money, property, or data.

    (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

    (3) Knowingly and without permission uses or causes to be used computer services.

5

> . . . .
>
> (7)  Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

Meta has plausibly alleged that SDTL violated all four subsections.

*(c)(1) violation*: "[W]ithout permission," SDTL "[k]nowingly access[ed]" Instagram "data" and "use[d]" the data to "obtain money." Cal. Penal Code § 502(c)(1). SDTL scraped Instagram profiles, in violation of Instagram's terms of service, and sold the scraped profile data online. *See* Compl. ¶¶ 21, 26–31.

*(c)(2) violation*: "[W]ithout permission," SDTL "[k]nowingly access[ed]," "copie[d]," and "[made] use of . . . data" taken from "a computer, computer system, or computer network." Cal. Penal Code § 502(c)(2). SDTL scraped Instagram profiles "from restricted Meta computers that are only accessible to authorized and logged in Instagram users," Compl. ¶ 27, and sold data from those profiles online, *see id.* ¶¶ 26, 30–31.

*(c)(3) violation*: "[W]ithout permission," SDTL "[k]nowingly . . . use[d] or cause[d] to be used computer services." Cal. Penal Code § 502(c)(3). Meta's "computer services" plausibly include Instagram, "a photo and video sharing service, website and mobile application, and social network." Compl. ¶¶ 15, 50. *See* Cal. Penal Code § 502(b)(4) (defining "computer services" as including "internet services," "electronic message services," and "other uses of a computer, computer system, or computer network"); *id.* § 502(b)(2) (defining "computer network" as "any system that provides communications between one or more computer systems and input/output devices, including, but not limited to, . . . mobile devices"). SDTL used Meta's computer services without permission by scraping Instagram profiles "from restricted Meta computers," Compl. ¶ 27, even after Meta revoked SDTL's Instagram access, *see id.* ¶¶ 33–35, 51.

*(c)(7) violation*: "[W]ithout permission," SDTL "[k]nowingly . . . accessed [a] computer, computer system, or computer network." Cal. Penal Code § 502(c)(7). SDTL scraped Instagram profiles "from restricted Meta computers," Compl. ¶ 27, even after Meta revoked SDTL's Instagram access, *see id.* ¶¶ 33–35, 51.

Meta can enforce the CDAFA through this civil action. *See* Cal. Penal Code § 502(e)(1).

Turning to the third *Eitel* factor, the allegations aren't too general or conclusory, and when accepted as true, *see Cripps*, 980 F.2d at 1267, they support Meta's claims.

Fourth, the sum of money at stake ($365,430.45) is proportional to the harm caused.

Fifth, nothing in the record indicates a dispute concerning material facts.

Sixth, nothing in the record indicates excusable neglect by SDTL.

Seventh, although there is a strong policy favoring decisions on the merits, SDTL's failure to answer the complaint has made a decision on the merits unfeasible.

## D.     Remedies

Meta requests injunctive relief and reimbursement of attorneys' fees and costs. The company has elected not to pursue claims for compensatory damages and for disgorgement of profits. *See* Dkt. 23 at 25.

### 1.     Injunctive Relief

Meta seeks to permanently enjoin SDTL from:

a. Accessing or attempting to access Meta's platforms, including Facebook and Instagram, and Meta's computer systems;

b. Developing, offering, and marketing software or computer code intended to automate the collection of data or circumvent Meta's enforcement measures;

c. Engaging in any activity that disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of Meta's platforms, including Facebook and Instagram, and Meta's computer systems;

d. Engaging in any activity, or facilitating others to do the same, that violates Instagram's Terms of Use and related policies; and

e. Selling or distributing data of any kind obtained or purportedly obtained from Meta or its products, including Facebook and Instagram.

Dkt. 23-2 at 2–3 (proposed judgment); *accord* Compl., Request for Relief ¶ 2(a)–(e).

The requested injunction is warranted.

SDTL and its principals are repeat offenders—they scrape Instagram data, Meta detects their scraping and tries to stop it, and SDTL scrapes again. *See* Compl. ¶¶ 32–35. Because SDTL's misconduct is unrelenting, damages aren't likely to be an adequate remedy. For the same reason, Meta has demonstrated "irreparable harm." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) ("Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages.").

This isn't a case in which "the public interest" would be "disserved by a permanent injunction" or where "the balance of hardships" favors the defendant. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The public interest and the balance of hardships favor Meta, which is reasonably trying to protect its customers' account information.

**2.  Attorneys' Fees**

Under the CDAFA, the Court may award a prevailing plaintiff "reasonable attorney's fees." Cal. Penal Code § 502(e)(2). Invoking this provision, Meta seeks a fee award of $361,790.

Meta is represented by counsel from Susman Godfrey LLP. The firm's attorneys and paralegals spent 657.90 hours litigating this case. *See* Dkt. 25-1, Jiang Fees Decl. ¶ 3. Of that total, they spent 293.10 hours before filing the complaint, 251.20 hours after filing the complaint through filing proof of service, and 113.60 hours after service, primarily preparing the motion for entry of default and the motion for default judgment. *See id.* ¶¶ 6–8.

The hourly rates of the attorneys and paralegals who worked on the case ranged from $275 to $1,300. *See id.* ¶¶ 9–15. At the bottom end of this range was the 2021 rate for one of the firm's paralegals. *See id.* ¶ 14. At the top end was the 2022 rate for one of the firm's co-managing partners. *See id.* ¶ 9. An associate who billed 69 percent of the total hours billed on the case had hourly rates of $500 in 2021 and $525 in 2022. *See id.* ¶ 13.

For a case in which the defendant didn't appear, $361,790 is a considerable amount of attorneys' fees. But for two reasons, the undersigned finds that this amount was reasonable here.

First, counsel's hourly rates were reasonable. The attorneys who worked on this case were experienced and skilled, and the rates they charged were consistent with the prevailing market

rates for attorneys of similar skill, experience, and reputation in the San Francisco Bay Area. *See, e.g., Fleming v. Impax Labs. Inc.*, No. 16-cv-06557-HSG, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (finding rates ranging from $760 to $1,325 for partners and $175 to $520 for associates "in line with prevailing rates in this district").

Second, the amount of time counsel spent working on the case was reasonable. SDTL is engaged in surreptitious online activity, which takes time to investigate. SDTL is also based abroad, which required Meta's attorneys to take extra steps to serve SDTL with process. Meta's attorneys also prepared clear and effective pleadings and briefing, which takes time to do.

In short, Meta's attorneys did their job and did it well. They seek to recover a reasonable amount of fees, and the award they seek should be included in the judgment.

### 3. Costs

As the prevailing party, Meta can also recover litigation costs. *See* Fed. R. Civ. P. 54(d)(1). Meta's litigation costs totaled $3,640.45 and consisted of the case filing fee, service fees, pro hac application fees, and delivery fees. *See* Jiang Fees Decl. ¶ 16. All of these costs were reasonable and the judgment should cover them.

## IV. CONCLUSION

The undersigned recommends that a district judge grant Meta's motion, enter default judgment in the amount of $365,430.45 (consisting of $361,790 in attorneys' fees and $3,640.45 in costs), and enter the permanent injunction requested by Meta.

By November 29, 2022, Meta must serve SDTL with a copy of this report by any means reasonably calculated to provide actual notice. Meta must then file proof of service. Any party may object to this report within fourteen days of being served with a copy of it. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).

**IT IS SO ORDERED.**

Dated: November 15, 2022

Alex G. Tse
United States Magistrate Judge